**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.  No.  10-cr-02077

JOAQUIN BASSOLS,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

The primary issue addressed in this opinion is whether a driver who drives on the line or stripe[1] that divides a lane of traffic from another lane or on the line or stripe that separates a lane from the shoulder of the road violates a New Mexico statute that requires persons to drive "as nearly as practicable entirely within a single lane." NMSA 1978, §66-7-317. Resolution of this issue requires the Court to draw a fine line so that a "bright line" standard can be applied. Where that line is drawn hinges on the meaning of the words in the New Mexico statute. Having considered the arguments of both parties as well as the applicable law, the Court concludes that the word "lane" as used in the statute does not include the line or stripe that divides a lane of traffic from another lane or the line or stripe that separates a lane from the shoulder of the road. That is, the Court will apply a "bright line" standard that a driver who drives *on* the line or stripe dividing a lane of traffic from another lane or on the line or stripe that separates a lane from the shoulder has failed to drive "as nearly as practicable entirely within a single lane."

---

[1]Due to the various terms that courts have used to describe the lines or stripes that demarcate the boundary of a lane of traffic, and in an effort to avoid repetition in this opinion, the Court will variably refer to the line or stripe that separates a lane of traffic from the shoulder of the road or from another lane as a line, stripe, or lane marker throughout this opinion.

**FACTS**

On March 14, 2011, at an evidentiary hearing on Defendant Joaquin Bassols' Motion to Suppress,[2] the Court heard the testimony of Officer Hermilio Lucero, whom the Court found to be credible, and the Court viewed a dashcam video of the encounter between Officer Lucero and Bassols. Based on the testimony of Officer Lucero and the Court's review of the video, the Court makes the following factual findings:

On June 16, 2010, Officer Hermilio Lucero was patrolling a section of Interstate 40 between exit 81 and exit 89. In that area, Interstate 40 is a divided highway with two lanes of travel in each direction—an inner or left lane that is adjacent to the median and an outer or right lane that is adjacent to the shoulder. While Officer Lucero was traveling eastbound in the left lane, he observed a silver Mercury vehicle ahead of him traveling eastbound in the right lane. Officer Lucero noticed the Mercury veer toward the outer edge of the right lane, almost striking the solid stripe dividing the right lane from the shoulder, and then veer back to the left toward and very close to the dashed line dividing the left and right lanes. Officer Lucero then saw the Mercury veer back to the right and drive for a few seconds onto and on the solid stripe dividing the right lane from the shoulder. While Officer Lucero was certain that the tires of the Mercury went onto the solid stripe, he was unsure of whether the tires crossed over the stripe onto the shoulder because while he could see the vehicle go onto the stripe, he could not see how far

---

[2]On February 28, 2011, Defendant Joaquin Bassols filed a Motion To Suppress All Evidence Found As A Result Of The June 16, 2010 Traffic Stop Of The Silver Mercury Driven By Bassols (Doc. No. 38) (Motion to Suppress). The Government filed its Response In Opposition To Defendant's Motion To Suppress (Doc. No. 44) on March 11, 2011, and Bassols filed his Reply Brief In Support Of Joaquin Bassols' Motion To Suppress (Doc. No. 46) on March 14, 2011, the day of the hearing.

across the stripe it went.  Because of Officer Lucero's position slightly behind and to the side of the Mercury, the dashcam video does not conclusively show whether the Mercury drove on the shoulder by crossing the solid stripe that divided the lane from the shoulder.  Officer Lucero believed what he observed to be a violation of NMSA 1978, Section 66-7-317 (1978), a statute which requires drivers to drive "as nearly as practicable within a single lane." Officer Lucero testified that he had been trained that a vehicle that drives on a lane marker is in violation of Section 66-7-317.  Because of this perceived violation, Officer Lucero turned on his emergency equipment and stopped the Mercury.  At the time that Officer Lucero observed the Mercury veer onto the stripe dividing the right lane from the shoulder, there were no adverse weather conditions, there was no wind, and there were no cross currents that might blow a vehicle from one side to the other.  The day was clear, the view was unobstructed, and there was nothing in the road that would have caused the driver to veer out of his lane.

After stopping the Mercury, Officer Lucero asked the driver, who was identified as Bassols, to step out of the Mercury.  Officer Lucero then engaged Bassols in general conversation about Bassols' travel plans while Officer Lucero filled out a warning citation for violating Section 66-7-317.  Officer Lucero discovered that Bassols and a friend, his passenger, had flown from Miami, FL, where they both lived, to Phoenix, AZ where Bassols rented the vehicle.  At the time of the stop, Bassols and his passenger were traveling to Memphis, TN to visit a friend who had recently been in an accident.

After completing the warning citation, Officer Lucero returned Bassols' driver's license and other documentation to Bassols.  Officer Lucero then gave Bassols the citation and advised Bassols to have a good day and to be careful.  Bassols turned around and began walking back toward his vehicle.  As Bassols was walking away, Officer Lucero called out to Bassols.  Bassols

turned around and started walking toward Officer Lucero. When Bassols turned around, Officer Lucero asked "can I ask you a few more questions." At the time when Officer Lucero asked Bassols if he would answer a few more questions, Officer Lucero was alone. Officer Lucero did not draw his gun or physically stop Bassols. Officer Lucero did not use an aggressive tone, and he did not yell at Bassols. Officer Lucero next asked if there was anything illegal in the Mercury and whether Bassols would be willing to let Officer Lucero search the Mercury. Bassols replied that there was nothing illegal in the vehicle and agreed to let Officer Lucero conduct a search of the vehicle. After Bassols read and signed a consent to search form, for safety reasons Officer Lucero conducted a pat-down search of Bassols for weapons. Officer Lucero directed Bassols to move to the side of the highway right–of-way, far away from the vehicle. Officer Lucero did not have any specific information that Bassols might have been armed or dangerous at the time that he conducted the pat-down. Next, Officer Lucero obtained consent to search the vehicle from the passenger and also did a brief pat-down of the passenger. At some point after Officer Lucero obtained consent to search the Mercury, another officer arrived at the scene. After briefly looking in the trunk and the passenger compartment of the Mercury, Officer Lucero deployed his canine to sniff the exterior of the vehicle. The dog alerted to the right front bumper where Officer Lucero ultimately located twenty-seven bundles of marijuana and one bundle of methamphetamine.

## DISCUSSION

In his Motion to Suppress, Bassols argues that the evidence seized during the traffic stop should be suppressed for three reasons. First, Bassols contends that Officer Lucero did not have reasonable suspicion to stop the Mercury because Bassols did not commit a traffic violation. According to Bassols, Officer Lucero only saw Bassols weaving within his traffic lane, not

between traffic lanes, and therefore Bassols did not violate Section 66-7-317.  Second, Bassols contends that even if the traffic stop were valid, Officer Lucero impermissibly extended the length of the stop by asking Bassols to consent to a search of the vehicle after Bassols had already been cited for failing to maintain his lane.  Third, Bassols argues that by frisking Bassols for weapons prior to searching the vehicle, Officer Lucero violated the Fourth Amendment.

In its Response, the Government argues that the traffic stop was justified because Officer Lucero observed Bassols' weave out of his lane in violation of Section 66-7-317 and because Officer Lucero believed that Bassols might have been impaired.   With respect to Bassols' argument that the stop was impermissibly extended, the Government contends that the post-citation encounter was consensual and that, even if the encounter were not consensual, Officer Lucero had reasonable suspicion to prolong the stop.  Finally, the Government argues that Officer Lucero had a reasonable suspicion that Bassols posed a threat to officer safety that justified the pat-down search.

In his Reply, Bassols contends that because his vehicle touched but did not cross the lane marker, he did not violate Section 66-7-317.  Bassols does not respond to the Government's assertion that the stop became consensual after Officer Lucero cited Bassols.  Instead, Bassols argues that while Officer Lucero may have had consent to search the vehicle, this consent did not justify the pat-down search of Bassols that Officer Lucero performed prior to searching the vehicle.

## I.  Validity of the Traffic Stop

"Because a routine traffic stop is more akin to an investigative detention than a custodial arrest, a traffic stop is reasonable if (1) the officer's action was justified at its inception, and (2) the officer's action was reasonably related in scope to the circumstances which justified the

interference in the first place." *United States v. DeGasso*, 369 F.3d 1139, 1143 (10th Cir. 2004). The first prong of this test requires the Court to determine if the stop was objectively justified. *See id.* A traffic stop is valid if an officer "had reasonable suspicion that th[e] particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." *U.S. v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (quotation marks omitted). As long as an officer had reasonable suspicion, the "actual motivations or subjective beliefs and intentions of the officer are irrelevant." *DeGasso*, 369 F.3d at 1143.

**A. Violation of Section 66-7-317**

Officer Lucero stopped Bassols after observing Bassols' vehicle veer out of its lane and onto the solid stripe that separated the right lane of Interstate 40 from the shoulder. Officer Lucero believed that driving on the dividing line violated Section 66-7-317. Section 66-7-317 provides that "a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." Bassols contends that in order to violate Section 66-7-317, a driver must actually cross a dividing stripe and that driving on the stripe is insufficient. In addition, Bassols contends that a single instance of crossing a dividing stripe is insufficient to justify a stop. Thus, Bassols contends that Officer Lucero made a mistake of law by stopping Bassols for weaving within his own lane of traffic and that the stop was therefore invalid.

In order for a stop to be valid, there must be an objectively justifiable basis for stopping a defendant that is grounded in an actual violation of a law. *DeGasso*, 369 F.3d at 1144. While an officer's reasonable mistake of fact may support the probable cause or reasonable suspicion necessary to justify a traffic stop, an officer's mistake of law will not. *Id*. If an officer reasonably, but incorrectly, believes either that a defendant's conduct violated a statute or that a

statute justified a traffic stop, the stop is invalid. *Id.* (noting that an officer's mistaken belief that the defendant's use of fog lights during the day was illegal did not justify a traffic stop). However, if a defendant has actually violated a traffic law, an officer is justified in effectuating a stop even if the officer is wrong about the particulars of the law that the officer believes the defendant has violated or the officer incorrectly identifies the law that has been violated. *See U.S. v. Eckhart*, 569 F.3d 1263 (10th Cir. 2009) (noting that "[a]n officer need not be able to quote statutes (or scriptures), chapter and verse" and that "[s]ome confusion about the details of the law may be excused so long as there was" an actual traffic violation).

Because a stop based on a mistake of law is invalid, the stop in this case is valid only if the conduct that Officer Lucero observed actually violated Section 66-7-317. The Tenth Circuit has never directly addressed whether a driver who drives *on*, but not all the way across, a dividing marker has violated an "as nearly as practicable"[3] statute. In *United States v. Marquez*, 114 F.3d 1198 (10th Cir. 1997) (unpublished) the Tenth Circuit noted that it was "not clear" whether a driver whose tires "touch[ed] the lane line that divides the right lane from the shoulder" violated an Oklahoma statute that is identical to Section 66-7-317. The Tenth Circuit noted that "there are no reported decisions that treat a brief touching, as opposed to crossing, of the lane as a violation of" the law. *Id.* In *Marquez*, the Tenth Circuit declined to resolve the question, concluding that the officer had reasonable suspicion to believe that the driver was

---

[3] The language used in Section 66-7-317 is taken verbatim from Section 11-309(a) of the Uniform Vehicle Code. *See United States v. Jones*, 501 F.Supp.2d 1284, 1293 n.10 (D.Kan. 2007) (noting that an identical Kansas statute is derived from the Uniform Vehicle Code). Because of this, every state in the Tenth Circuit and a majority of the states in the United States have identical statutory provisions. *See e.g.* Colo Rev. Stat. § 42-4-1007 (1994); Kan. Stat. Ann. § 8-1522 (2009); Okla. Stat. Ann. tit. 47, §11-209 (2010); Utah Code. Ann. §41-6a-710 (2009); Wyo. Stat. Ann. §31-5-209 (1984). For this reason, the Court will refer to similar statutes in other states as "as nearly as practicable" statutes.

impaired and that it was therefore unnecessary to determine if the officer had reasonable suspicion that the Oklahoma statute had been violated. *Id.* Importantly, the Tenth Circuit did not explicitly reject the argument that driving on a lane marker is sufficient to justify a stop under an "as nearly as practicable" statute.

In a subsequent unpublished opinion, which also interpreted Oklahoma law, the Tenth Circuit implied that touching the lane lines alone could be sufficient to justify a stop under an "as nearly as practicable statute." In *United States v. De La Fuente-Ramos*, 242 F.3d 391, *1 (10th Cir. 2000) (unpublished), an officer had pulled a driver over after observing a van "weaving from lane line to shoulder line several times, touching three times." While the Court ultimately upheld the stop because the officer had reasonable suspicion to believe that the driver of the van was impaired, the Court was "not persuaded by th[e] argument" that merely touching the dividing lines was insufficient to establish that the driver had failed to drive as nearly as practicable within a single lane. *Id.* at *5. The Tenth Circuit explained that the van's touching the lane line three times "supports the district court's conclusion that [the officer] possessed the necessary reasonable suspicion to make the initial stop of the van" for a violation of Oklahoma's "as nearly as practicable" statute. *Id.*

In addition to the fact that the Tenth Circuit has implied that driving on a lane marker is sufficient to justify a stop under an "as nearly as practicable" statute, the Tenth Circuit has never required that a driver cross a line by any specific distance before a stop will be justified. The Tenth Circuit has upheld stops under statutes identical to New Mexico's where a vehicle crossed "roughly one foot into" another lane, *United States v. Vasquez*, 555 F.3d 923, 925 (10th Cir. 2009), where a vehicle's "right back tire" crossed the fog line, *United States v. Egan*, 256 Fed.Appx. 191, 193 (10th Cir. 2007) (unpublished), and where a vehicle crossed "approximately

8

six inches over the right-side fog line." *United States v. Landshof*, 77 Fed.Appx. 482, 484 (10th Cir. 2003).  Because the Tenth Circuit has consistently upheld stops of drivers who have minimally crossed a lane marker, it is unlikely that the Tenth Circuit would invalidate the stop of a driver who weaves onto and then drives on the solid stripe dividing the lane from the shoulder.

It is also likely that New Mexico would recognize that a driver whose tires touch a lane marker has violated Section 66-7-317.  Because no published New Mexico court opinion has addressed whether a driver violates Section 66-7-317 by making contact with the lane boundary line, the Court must make an *Erie*-guess as to how the New Mexico Supreme Court would rule.  *See Pehle v. Farm Bureau Life Ins. Co., Inc.*, 397 F.3d 897 (10th Cir. 2005) (noting that when there is an absence of explicit guidance from state courts, a court must attempt to predict state law).  When construing the meaning of a statute, the "primary goal" of the New Mexico Supreme Court "is to ascertain and give effect to the intent of the legislature." *State v. Nick R.*, 2009-NMSC-050, ¶ 11, 147 N.M. 182, 218 P.3d 868.  In order to ascertain the intent of the legislature, a court is required to "examine the plain language of the statute as well as the context in which it was promulgated, including the history of the statute and the object and purpose the Legislature sought to accomplish."  *Id.*  In doing so, care must be taken to "avoid adoption of a construction that would render the statute's application absurd or unreasonable or lead to injustice or contradiction." *Id.* (quotation marks omitted).

Section 66-7-317 provides that "[w]henever any roadway has been divided into two or more clearly marked lanes for traffic . . . a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." Under the plain language of the statute, a driver who does not drive "entirely within a single lane" has failed to comply with the

statute. Because Section 66-7-317 also requires that a driver ascertain that it is safe to move from a lane prior to moving from the lane, it is clear that the purpose of the statute is to promote roadway safety.

Bassols contends that the statutory language "single lane" includes the lane markers that separate lanes and a lane from shoulder and that a driver who is driving on a lane marker is still "entirely within a single lane." Under Bassols' interpretation of the statute, the purpose of the statute, promoting roadway safety, would not be met and the Court would be required to construe the statute in a manner that leads to an absurd result in violation of New Mexico's rules of statutory interpretation. If a lane of traffic is defined to include the lane dividing lines, then there would be an overlap between each lane on a roadway and two vehicles could legally occupy the same physical space at the same time despite the fact that the vehicles would collide. If, for example, two drivers were driving in opposite directions on a two lane road, both drivers, under Bassols' interpretation of the statute, would be permitted to drive with their tires on the center line. Similarly, two vehicles that were traveling in the same direction on a highway such as Interstate 40 would both be permitted to drive with their tires on the line that divides the right and left lanes. Because the vehicles that are driving on the same line in either scenario might collide, construing the statute in the manner that Bassols advocates for would be contrary to the New Mexico legislature's intent of promoting roadway safety and would lead to the absurd result that two vehicles could each be entirely within a single, separate lane despite the fact that the vehicles are actually occupying the same physical space. *See Oregon v. McBroom*, 39 P.3d 226, 228 (Ct. App. 2002) (interpreting a statute identical to New Mexico's and concluding that "the phrase 'within a single lane' does not mean 'on' the lines that mark or divide the lanes" that "the statute requires that drivers stay 'within' the lines that mark the lanes" and that "the

legislature did not intend to permit opposing motorists to vie for control of the center dividing line"). Further, given that the sides of most vehicles extend slightly beyond the outer edge of the tires, a vehicle that is driving with its tire on a lane marker even poses a risk to other vehicles that are not also driving on, but are close to, the lane marker. Thus, the only way to construe Section 66-7-317 without reaching a result that permits two vehicles to occupy the same physical space is to conclude that the "single lane" contemplated by the New Mexico legislature encompasses only that portion of the roadway that is between the lines or stripes that demarcate the "single lane." Because the lane ends at the point that the lane marker begins, a driver who drives on a lane marker has necessarily failed to drive entirely within a single lane.

While Bassols was stopped for driving on the solid stripe that separated his lane of traffic from the shoulder of the road, not on the line between two traveling lanes, this distinction does not alter the Court's conclusion. If a lane does not include the center lane marker of a two lane highway or the lane marker dividing two traveling lanes going in the same direction, then it cannot include the lane marker between the lane and the shoulder. *See* NMSA 1978, Section 66-1-4.15(N) (2007) (defining roadway as "that portion of a street or highway . . . used for vehicular travel, exclusive of the berm or shoulder"). And, just as a vehicle driving on the line between two lanes could collide with another vehicle driving on that same line, a vehicle driving on the stripe between the lane and the shoulder could collide with a vehicle parked on the shoulder. The Court therefore concludes that New Mexico courts would interpret Section 66-7-317 to prohibit a driver from driving on the lane markers that divide a lane from the shoulder or from another lane.

The Court is cognizant of the fact that the Ninth Circuit Court of Appeals has reached a contrary conclusion. In *United States v. Colin*, 314 F.3d 439 (2002), the Ninth Circuit held that a

11

California statute, which is nearly identical to Section 66-7-317,[4] was not violated unless a driver actually *crossed* a dividing line. The Ninth Circuit explained that "[t]ouching a dividing line, even if a small portion of the body of the car veers into a neighboring lane, satisfies the statute's requirement that a driver drive 'as nearly as practical entirely within a single lane.'" *Id.* at 444. However, in light of the Tenth Circuit's suggestion in *De La Fuente-Ramos* that touching the line is sufficient, and in light of the fact that interpreting Section 66-7-317 in the same manner as the Ninth Circuit interpreted the California statute would lead to the absurd result that two vehicles could permissibly occupy the same physical space at the same time, the Court declines to follow the Ninth Circuit ruling and concludes that driving on a lane marker is a violation of Section 66-7-317.

In addition, the Court recognizes that in *United States v. Lyons*, 7 F.3d 973, 976 (10th Cir. 1993) *overruled on other grounds by United States v. Botero-Ospina*, 71 F.3d 783, 786-87 (10th Cir.1995), the Tenth Circuit stated that "if failure to follow a perfect vector down the highway [was a] sufficient reason[] to suspect a person of driving while impaired, a substantial portion of the public would be subject each day to an invasion of their privacy." While Bassols appears to argue that *Lyons* created a bright line rule that drivers are not required to maintain a perfect vector when driving on a roadway, *Lyons* dealt only with whether weaving within a lane gave rise to reasonable suspicion of intoxication, not whether the driver had violated a statute requiring him to drive entirely within a single lane. *See id.* Thus, *Lyons* does not mandate a different result.

Bassols next argues that a single instance of crossing a lane marker is insufficient to

---

[4] The California statute, unlike Section 66-7-317, requires a vehicle to be driven "as nearly as *practical* entirely within a single lane" rather than "as nearly as *practicable* entirely within a single lane." Cal. Vehicle Code §21658(A) (1975).

justify a stop under Section 66-7-317. In his Reply, Bassols notes that the Eleventh, Ninth, and Sixth Circuit Courts of Appeals have held that a single instance of crossing a lane marker is insufficient to justify a stop under statutes identical to Section 66-7-317. The Court, however, is bound by Tenth Circuit law and the Tenth Circuit Court of Appeals has explicitly rejected the argument that the "as nearly as practicable" requirement of statutes identical to Section 66-7-317 "requires the conclusion, as a matter of law, that a single instance of crossing over the fog line can never violate the statute." *United States v. Alvarado*, 430 F.3d 1305, 1308 (10th Cir. 2005). In fact, the Tenth Circuit has consistently held that even a single instance of crossing over a lane marker can justify a stop under state statutes requiring a driver to drive "as nearly as practicable" within a single lane. *See United States v. Vasquez*, 555 F.3d 923, 925 (10th Cir. 2009) (upholding stop under Utah's "as nearly as practicable" statute of vehicle that "drift[ed] roughly one foot into the right-hand lane without signaling"); *United States v. Valenzuela*, 494 F.3d 886, 887 (10th Cir. 2007) (upholding stop under Colorado's "as nearly as practicable statute of driver that crossed three to four feet into the right lane); *United States v. Perales*, 370 Fed.Appx. 967 (10th Cir. 2010) (upholding stop under Kansas' "as nearly as practicable statute" of driver who "momentarily crossed the fog line and then weaved within its lane of travel"); and *United States v. Herrell*, 41 Fed.Appx. 224 (10th Cir. 2002) (upholding stop under New Mexico's "as nearly as practicable" statute of driver who crossed double yellow line).

Determining whether a single instance of crossing a traffic line violates an "as nearly as practicable" statute "require[s] a fact-specific inquiry into the particular circumstances present during the incident in question in order to determine whether the driver could reasonably be expected to maintain a straight course at that time in that vehicle on that roadway." *United States v. Alvarado*, 430 F.3d 1305, 1309 (10th Cir. 2005). This inquiry requires the Court to look

13

at the "weather conditions, road features, [and] other circumstances that could have interfered with [the driver's] ability to keep his vehicle in a single lane." *Id.*; *but see United States v. Gregory*, 79 F.3d 973, 975 (10th Cir. 1996) (concluding that a single instance of swerving onto the shoulder did not violate the "as nearly as practicable" requirement because the driver was driving a U-Haul truck on a mountainous, winding road, in windy conditions).

      Having determined that a driver violates Section 66-7-317 when the driver's tires leave the lane by making contact with the line or stripe dividing the lane from the shoulder or another lane, the Court concludes that Officer Lucero had reasonable suspicion to stop Bassols for a violation of Section 66-7-317 when Officer Lucero observed Bassols' vehicle first weave right within his lane, next abruptly weave left almost to the center line, and then veer to the right and drive on the solid stripe between the lane and the shoulder for a few seconds. At the time that Bassols veered out of his lane, there were no adverse driving conditions that could have caused Bassols to do that. Bassols was driving a normal-sized automobile on a straight, well-maintained stretch of Interstate 40 on a clear, sunny day. There was no wind, and there were no obstacles in the road that would have required Bassols to veer out of his lane of traffic. In the complete absence of adverse driving conditions, there was not a single objective factor that might have made it impracticable for Bassols to stay entirely within a single lane. Thus, Bassols' single departure from his lane of traffic was sufficient to give Officer Lucero reasonable suspicion to stop Bassols. This is especially so in light of the fact that Bassols abruptly weaved within his own lane before ultimately veering onto the dividing stripe. *See Vasquez*, 555 F.3d at 925 (upholding stop under Utah's "as nearly as practicable" statute of vehicle that "drift[ed] roughly one foot into the right-hand lane without signaling"); and *Perales*, 370 Fed.Appx. at 967 (upholding stop of vehicle that "momentarily crossed the fog line and then

14

weaved within its lane of travel"). Because Officer Lucero had reasonable suspicion to believe that Bassols violated Section 66-7-317, the stop was not unlawful.

**B. Suspicion of Impairment**

In addition to arguing that Bassols' conduct violated Section 66-7-317, the Government also argues that Officer Lucero had a reasonable belief that Bassols may have been fatigued or impaired.[5] Generally, an officer's observation that a car is weaving can justify a stop based on the officer's belief that the driver may be impaired.  In *United States v. Herrell*, 41 Fed.Appx. 224, 230 (10th Cir. 2002), the Tenth Circuit concluded that an officer was justified in stopping a driver, after observing the driver cross over the center line, either because the officer reasonably could have believed that the driver had violated Section 66-7-317 *or* because the officer could have believed that the driver was driving his vehicle while impaired.  In *Herell,* the officer "articulated on the witness stand that he was concerned about whether the driver was impaired by alcohol or drugs or was sleepy." *Id.*

However, in order for a stop based on suspicion of impairment to be justified there must be evidence that the stop was actually motivated by a concern that the driver was impaired.  In *Lyons*, for example, the Tenth Circuit concluded that an officer did not have reasonable suspicion to stop a driver on suspicion of intoxication because the officer failed "to initiate any effort to determine the defendant's state of sobriety after effectuating the stop." 7 F.3d at 976. Similarly, the Tenth Circuit noted in *Gregory* that the fact that an officer did not administer a field sobriety test after stopping a driver who had swerved over the fog line indicated that the officer "must have been satisfied that the vehicle's isolated movement into the right shoulder did

---

[5]While the Government appeared to have abandoned this argument at the suppression hearing, the Court will nevertheless briefly address the argument.

not give rise to a reasonable suspicion that the driver was intoxicated. 79 F.3d at 978. The Tenth Circuit also noted that the officer testified that "he did not intend to stop the defendant to conduct a DUI investigation" despite his concern that the failure to maintain the traffic lane might have been due to intoxication. *Id.*

Here, Officer Lucero did not perform a field sobriety test or otherwise investigate any suspicion he may have had that Bassols was intoxicated. Thus, suspicion of impairment does not form an alternative justification for the stop. Nevertheless, because Officer Lucero had reasonable suspicion to believe that Bassols violated Section 66-7-317, the stop was justified.

## II. Length of Detention

Bassols next argues that even if the stop were valid, Officer Lucero unlawfully prolonged the stop by asking Bassols whether he had anything illegal in the car and by asking Bassols to sign a consent to search form. During a traffic stop, an officer is generally permitted to "request a driver's license, registration, and other required papers, run requisite computer checks, and issue citations or warnings as appropriate." *United States v. Rosborough*, 366 F.3d 1145, 1148 (10th Cir. 2004). "Further detention is appropriate only if during the course of the traffic stop, (1) the officer develops an objectively reasonable and articulable suspicion" that the driver is engaged in some illegal activity, or (2) the initial detention becomes a consensual encounter." *Id.* (quotation and alteration marks omitted). Although Bassols argues that Officer Lucero did not have reasonable suspicion to extend the stop and search Bassols' vehicle, Bassols does not address whether the encounter became consensual. Because the Court concludes that the encounter became consensual prior to Officer Lucero's request to search the vehicle, the Court need not consider Bassols' argument that Officer Lucero lacked reasonable suspicion to lengthen the traffic stop.

"A detention for a traffic citation can turn into a consensual encounter after [a police officer] has returned the driver his documentation so long as a reasonable person under the circumstances would believe he was free to leave or disregard the officer's request for information." *United States v. Wallace*, 429 F.3d 969, 974-75 (10th Cir. 2005) (quotation omitted).  In determining whether a detention became a consensual encounter, the Court considers "whether the officer's conduct constituted a coercive show of authority, such that a reasonable person would believe he was not free to decline the officer's requests or otherwise terminate the encounter." *Rosborough*, 366 F.3d at 1149.  "Factors tending to show that consent was coerced include the presence of more than one officer, the display of weapons, physical touching, and use of an aggressive tone." *Id.* "[A]n unlawful detention occurs only when the suspect has an objective reason to believe he or she is not free to end the conversation with the officer and proceed on his or her own way." *Wallace*, 429 F.3d at 975.

After Officer Lucero gave Bassols a warning citation for violating Section 66-7-317, Officer Lucero told Bassols to have a nice day and to be safe.  Bassols then turned and walked back toward his vehicle. Because Bassols began to walk back toward his vehicle after Officer Lucero advised Bassols to "have a nice day" and to "be safe," the Court concludes that a reasonable person in Bassols' position would believe that he was free to leave the scene and terminate his encounter with Officer Lucero. While Bassols was walking away, Officer Lucero called out to Bassols and asked if Bassols would answer a few more questions.  Officer Lucero did not order Bassols to return to Officer Lucero's car and he did not order Bassols to answer any questions. Bassols turned around and walked back to Officer Lucero.  Officer Lucero then asked Bassols if there was anything illegal in the vehicle and whether Bassols would consent to a search. At the time that he asked if Bassols would answer a few more questions, Officer Lucero

17

was alone, he did not display his weapon, he did not physically touch Bassols, he did not use a threatening tone, he did not yell, and he did not issue any orders. Because there is no evidence to suggest that a reasonable person in Bassols position would have felt compelled to comply with Officer Lucero's request to answer a few more questions, the Court concludes that the encounter became consensual when Bassols returned to Officer Lucero's vehicle to answer additional questions. Since Bassols voluntarily consented to continue his contact with Officer Lucero, the Court concludes that the stop was not impermissibly prolonged.

### III. Officer Lucero's Pat-down Search Was Justified

Bassols next contends that Officer Lucero did not have reasonable suspicion to conduct a brief pat-down search of Bassols prior to searching Bassols' vehicle. Despite the fact that Officer Lucero did not discover anything on Bassols' person during the patdown search, Bassols contends that the pat-down escalated the investigatory detention into a full blown arrest and that the evidence obtained in the search should therefore be suppressed. The Government, however, asserts that Officer Lucero was permitted to do a brief pat-down for safety reasons based on the fact that Officer Lucero was going to search Bassols' vehicle and would not be in a position to watch Bassols while focusing his attention on the search.

A pat-down search is permitted whenever "the facts available to the officer would warrant a man of reasonable caution to believe that a frisk would be necessary to protect himself." *United States v. Manjarrez*, 348 F.3d 881, 886 (10th Cir. 2003). In *Manjarrez*, the Tenth Circuit held that an officer was permitted to briefly pat-down a driver prior to searching the driver's vehicle because the officer could "not reasonably be expected to leave [d]efendant in his patrol car, turn his back on [d]efendant, insert his head into [d]efendant's car, and search the car without first checking [d]efendant for weapons." *Id.* at 887. Despite the fact that the officer

in *Manjarrez* did not indicate that the defendant posed a specific threat, the Tenth Circuit held that the officer's "minimally intrusive pat-down . . . was lawful based on [d]efendant's prior consent to search [the defendant's] car." *Id.* The Tenth Circuit's holding in *Manjarrez* authorized Officer Lucero to briefly pat-down Bassols prior to searching Bassols' vehicle to ensure that Bassols could not pose a threat to Officer Lucero while Officer Lucero's attention was diverted during the search of the vehicle.

Further, even if the pat-down were illegal, an illegal pat-down does not vitiate lawful consent that is given prior to an illegal pat-down. In *Manjarrez*, the Tenth Circuit rejected the defendant's argument that a post-consent pat-down can invalidate prior consent. The Tenth Circuit explained that it was "unable to discern how a subsequent pat-down, lawful or not, could bear upon the voluntariness of [d]efendant's prior consent." *Id.* Because the "prior consent was sufficiently attenuated from the subsequent pat-down" the Tenth Circuit concluded that the search of the vehicle would have been upheld even had the pat-down been illegal. *See id.* Here, Officer Lucero obtained Bassols oral and written consent to search the vehicle before he conducted the pat-down. Thus, the pat-down, even if it were illegal, does not affect the validity of Bassols' consent and does not require the suppression of evidence obtained as a result of the search.

Because the stop of Bassols' vehicle was justified by Officer Lucero's reasonable suspicion that Bassols had violated Section 66-7-317, because the stop was not impermissibly extended, and because Officer Lucero was permitted to briefly pat-down Bassols before searching Bassols' vehicle, the Court concludes that Bassols' Motion to Suppress should be denied.

IT IS ORDERED THAT Defendant Joaquin Bassols' Motion To Suppress All Evidence

Found As A Result Of The June 16, 2010 Traffic Stop Of The Silver Mercury Driven By Bassols (Doc. No. 38) is DENIED.

_____
SENIOR UNITED STATES DISTRICT COURT JUDGE